IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FADDIS CONCRETE, INC.,

*Plaintiff*,

v.                                                         Civil Action No. ELH-15-3975

BRAWNER BUILDERS, INC.,

*Defendant*.

## MEMORANDUM OPINION

Faddis Concrete, Inc. ("Faddis"), a supplier of materials, filed suit against Brawner

Builders, Inc. ("Brawner"), a general contractor for the Maryland State Highway Administration

("SHA"). ECF 1.[1] The Complaint contains four counts: Breach of Contract (Count I); Breach of

Contractual Duties (Count II); Brawner's Interference with Statutory Rights (Count III); and

Unjust Enrichment and Imposition of Constructive Trust (erroneously labeled as Count XI, but

construed as Count IV).[2] *Id.*

Now pending is Brawner's Motion for Judgment on the Pleadings (ECF 67, "Motion"),

which is supported by a copy of the "Purchase Order" between Brawner and Faddis, dated

January 24, 2013, and executed by Brawner and Faddis on February 7, 2013. ECF 67-1.[3] In the

Purchase Order, which I shall designate for convenience as the "Subcontract," Faddis is referred

to as the Seller and Brawner is identified as the Buyer. Faddis opposes the Motion (ECF 71,

---

[1] Suit was filed in the Eastern District of Pennsylvania. By Order of November, 24, 2015 (ECF 20), the District Court for the Eastern District of Pennsylvania transferred the case to this Court under 28 U.S.C. § 1631, or alternatively, pursuant to 28 U.S.C. § 1404(a). *Id.* Jurisdiction is founded on diversity of citizenship. *See* 28 U.S.C. § 1332.

[2] The Complaint proceeds directly from Count III to Count XI.

[3] The Motion, which is 20 pages in length, was filed without a separate memorandum of law. Rather, the legal argument in support of the Motion is included within the Motion. *See* Local Rule 105.1 (requiring a motion to be accompanied by a legal memorandum).

"Opposition"), supported by several exhibits. ECF 71-1.  Brawner has replied.  ECF 73 ("Reply").

Also pending is plaintiff's motion for leave to file a surreply.  ECF 74 ("Motion for Surreply").  Brawner opposes the Motion for Surreply (ECF 75) and Faddis has replied.  ECF 77.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion for Surreply.  And, I shall grant the Motion in part and deny it in part.

## I.    Factual Background[4]

SHA awarded Brawner a prime contract with respect to the extension of a noise barrier on a portion of southbound I-95 in Maryland (the "Project").  ECF 1, ¶ 5.  In connection with the Project, Brawner entered into the Subcontract with Faddis in February 2013 for the purchase of "Noise Wall Panels" and other materials.  ECF 67-1 at 1; ECF 1, ¶ 6.  Faddis, a SHA-approved supplier of materials (ECF 1, ¶ 6), began fabricating the concrete panels at its plant in Downington, PA.  *Id.*  ¶ 7.

On May 2, 2014, during the course of Faddis's performance of the Subcontract, David Coyne, a representative of SHA, sent a letter to Brawner stating that SHA believed Faddis's concrete panels contained "'aggregate from an unapproved source'" and warned that the requisite panel strength could not be verified.  *Id.* ¶ 8.

Faddis asserts that the statements in SHA's letter were false.  *Id.* ¶ 9.  As a result of SHA's accusations, SHA halted Faddis's work on the Project.  *Id.* ¶ 10.  Moreover, although SHA

_____

[4] The factual allegations are derived from the Complaint and the Subcontract, which was submitted as an exhibit to Brawner's Motion and is integral to the Complaint.  Based on the procedural posture of the case, I must assume the truth of the well-pleaded factual allegations in the Complaint.  *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

was informed by both plaintiff and defendant of its error, SHA suspended Faddis's Downington, PA plant from production of any materials for all SHA projects. *Id.* ¶ 15. Faddis alleges that this suspension made work on the Project more expensive (*id.* ¶ 16), idled its Downington plant, and rendered the plant unprofitable. *Id.* ¶ 17. Indeed, Faddis contends that SHA caused "a total disruption" of Faddis's "operation" at that plant. *Id.* ¶ 18.

Moreover, Faddis complains that during this period SHA notified the Virginia Department of Transportation ("VDOT") and the Pennsylvania Department of Transportation ("PDOT")—entities with which Faddis does business (*id.* ¶ 20)—of plaintiff's suspension "for quality reasons," and warned them of the alleged quality problems. *Id.* ¶ 19. As a result, VDOT suspended Faddis's Virginia plant, halted work on projects in Virginia, and barred Faddis from bidding on Virginia contracts. *Id.* ¶¶ 21, 22. SHA subsequently admitted its error. *Id.* ¶ 23. Although SHA notified VDOT and PDOT of its error (*id.* ¶ 26), Faddis suffered damages from the disparagement and loss of business, for which it has not been compensated. *Id.* ¶ 27-29.

During or shortly after these events, on June 23, 2014, Faddis asked Brawner to "pass through" its claims for damages against SHA. *Id.* ¶¶ 37-39. As plaintiff explains it, in order for Faddis, as subcontractor, to recover from SHA, the contract owner, the claim had to be initiated by Brawner, the prime contractor, because only Brawner has contractual privity with both sides. *Id.* ¶¶ 31-36. Moreover, Faddis avers that Brawner was "obligated to pass through all of Faddis' claims . . . ." *Id.* ¶ 33.

Faddis also gave notice of its claims to SHA directly. *Id.* ¶ 41; *id.* at 22. However, SHA informed Faddis that it could only bring a claim against SHA through the prime contractor, Brawner. *Id.* ¶ 42. But, Brawner refused to submit Faddis's claim to SHA. *Id.* ¶ 43.

Faddis also alleges that Brawner owes plaintiff $132,026.94, constituting the unpaid balance under the Subcontract, plus $36,353.00 for unpaid trucking charges. *Id.* ¶¶ 45-46, 50.

In its Opposition and an accompanying exhibit, Faddis notes that after the Complaint was filed, Brawner sent a letter to SHA on Faddis's behalf. ECF 71 at 15.

Additional facts are included in the Discussion.

## II.     Motion for Surreply

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court. The filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g.*, *Chubb & Son v. C & C Complete Servs., LLC,* 919 F. Supp. 2d 666, 679 (D. Md. 2013). A surreply may be permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted). However, a surreply is not permitted where the reply is responsive to an issue raised in the opposition. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003). In that posture, there was a full opportunity to present the movant's arguments. *Id.* at 606.

In its Reply, Brawner has raised several new arguments. ECF 73. Therefore, to the extent Faddis's surreply is responsive to these new arguments, I shall grant the Motion for Surreply and will consider the corresponding parts of Faddis's attached surreply (ECF 74-1).

## III.     Motion for Judgment:  Standard of Review

Defendant has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Under Rule 12(h)(2)(B), a defendant may assert "failure to state a claim upon which relief can be

granted" in a Rule 12(c) motion. A Rule 12(c) motion "for judgment on the pleadings" may be filed "[a]fter the pleadings are closed," so long as it is "early enough not to delay trial." Fed. R. Civ. P. 12(c). Such a motion is "assessed under the same standard that applies to a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to

satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer"

that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d

449, 455 (7th Cir. 1998)).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 822 F.3d at 167.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."  *Id*.

Brawner attached the Purchase Order.  As noted, for convenience I have designated it as the Subcontract.  ECF 67-1.  Faddis has identified it in the Complaint as the "Material Contract."  ECF 1, ¶ 6.  Clearly, the Subcontract is integral to the Complaint, and there is no dispute as to its authenticity.  Therefore, I shall consider it.

## IV.    Discussion

### A.  Choice of Law

Both parties assume, without discussing, that Maryland law applies to this dispute.

In regard to state law claims under diversity jurisdiction, federal courts apply federal procedural law and the substantive law of the state in which the proceeding is brought.  *See, e.g.*, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Leichling v. Honeywell Intern., Inc.*, 842 F.3d 848, 851 (4th Cir. 2016); *see also Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); C. Wright & A. Miller, 19 *Fed. Practice and Procedure*, § 4501 (3d ed.).  And, federal courts apply the choice of law rules of the state in which the court sits.  *See, e.g.*, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652-53 (4th Cir. 2010); *see also Prof'l Massage Training Cent., Inc. v. Accreditation*

*Alliance of Career Schools and Colls.*, 781 F.3d 161, 180 (4th Cir. 2015); *Demetres v. E. W. Const. Inc.*, 776 F.3d 271, 273 (4th Cir. 2015).

Under Maryland law, if a contract contains a choice of law provision, courts generally apply the law of the specified jurisdiction. *Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015). Article 18 of the Subcontract provides: "This Agreement shall be construed according to the laws of the State of Maryland, without regard to principles of conflict of laws." ECF 67-1 at 3. Therefore, I shall apply Maryland law.

## B. Principles of Contract Construction

In analyzing the claim for breach of contract, it is helpful to review the principles of contract formation and contract interpretation under Maryland law.

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Richard A. Lord, 1 *Williston on Contracts* § 1:1, at 2-3 (4th ed. 1990); *accord* Restatement (Second) Contracts § 1, at 5 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006). "A contract is formed when an unrevoked offer made by one person is accepted by another." *Prince George's County v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984). Thus, mutual assent is an integral component of every contract. *See, e.g.*, *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015). *See also Mitchell v. AARP*, 140 Md. App. 102, 116 (2001) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'" (citations omitted)). "Manifestation of mutual

assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran*, 398 Md. at 14, 919 A.2d at 708.

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cnty. Comm'rs of Caroline Cnty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Cnty. Comm'rs for Carroll Cnty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377-78, 941 A.2d 1181, 1209-10 (2008); *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956) (stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable").

"'The cardinal rule of contract interpretation is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224, 232 (2013) (citation omitted). To determine the parties' intentions, courts look first to the written language of the contract. *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006) ("[G]enerally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."); *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("[T]he court

must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated."), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).

"Maryland courts interpreting written contracts have long abided by the law of objective contract interpretation, which specifies that 'clear and unambiguous language' in an agreement 'will not give way to what the parties thought the agreement meant or was intended to mean.'" *Urban Growth Prop. Ltd. P'ship v. One W. Baltimore St. Assocs. LLC*, No. 882, Sept. Term, 2015, 2017 WL 526559, at *5 (Md. Ct. Spec. App. Feb. 9, 2017) (citation omitted) (unpublished); *see Cochran v. Norkunas*, 398 Md. 1, 16, 919 A.2d 700, 709 (2007); *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014) (internal quotations and alteration omitted). The court's "task, therefore, when interpreting a contract, is not to discern the actual mindset of the parties at the time of the agreement . . . ." *Dumbarton*, 434 Md. at 52, 73 A.3d at 232. Rather, the court is to "'determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *General Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)).

As indicated, to determine the parties' intentions, courts first look to the written language of the contract. *See Walton*, 391 Md. at 660, 894 A.2d at 594. "'The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.'" *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 313, 829 A.2d 626, 632–33 (2003) (citations omitted). A court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean. *See Dumbarton*, 434 Md. at 51, 73 A.3d at 232; *Dennis v. Fire &*

*Police Employees Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001); *see also, e.g.*, *Scarlett Harbor,* 109 Md. App. at 291, 674 A.2d at 142 ("Where the language of a contract is clear, there is no room for construction; it must be presumed that the parties meant what they expressed.").

Moreover, a court will not "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *Brensdel v. Winchester Constr. Co.*, 392 Md. 601, 623, 898 A.2d 472, 485 (2006). Indeed, "[i]t is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (*quoting Canaras v. Lift Truck Servs.*, 272 Md. 337, 350, 322 A.2d 866, 873 (1974)); *see Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 1443 (Table), 1992 WL 145269, at *5 (4th Cir. 1992) (per curiam) ("[A] court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck.").

Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda,* 198 Md. App. 337, 17 A.3d 744, 749 (2011)). To "prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *accord Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015); *see also RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010). In other words, "[i]t is the

parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005).

In *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland Court of Appeals said: "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (citation omitted) (emphasis in *Polek*); *see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F. Supp. 2d 419, 423 (D. Md. 2001).

### C. Faddis's Claims

As indicated, the Complaint contains four counts: "Breach of Contract" (Count I), "Breach of Contractual Duties" (Count II); "Interference with Statutory Rights" (Count III), and "Unjust Enrichment" (renumbered as Count IV). ECF 1.

In Count I, for breach of contract, Faddis appears to make two distinct claims: (1) Brawner owes Faddis a balance due under the Subcontract (ECF 1, ¶ 50); and (2) Brawner is liable, in an undetermined amount, for its alleged failure to pass through to SHA Faddis's claims against SHA. *Id.* ¶ 49.

In Count II, Faddis alleges "breach of contractual duties." Brawner asserts (ECF 67 at 10), and Faddis acknowledges (ECF 71 at 12-13), that there is no distinct cause of action for "breach of contractual duties." Indeed, Faddis's allegations in Count I and Count II are nearly identical. Count I alleges, *inter alia*: "Brawner breached its Material Contract with Faddis by failing to pass through and allow pursuit of claims against the SHA thereby assuming the responsibility for these damages." ECF 1, ¶ 13. Similarly, Count II alleges that "Brawner, without excuse, justification or explanation to Faddis, failed and refused to pass on Faddis's

claims to the SHA, thereby irreparably prejudicing Faddis [*sic*] rights," and therefore "Brawner assumed responsibility for the consequences of its actions including the liability of the SHA for damages to Faddis." *Id.* ¶ 14.

I shall construe Count I as the breach of contract claim with respect to Faddis's claim of money due and owing from Brawner on the Subcontract. And, I shall construe Count II as Faddis's claim against Brawner based on Brawner's failure to pass through to SHA Faddis's claims against SHA.

### 1.  Count I: Breach of Contract

Plaintiff claims that defendant owes plaintiff the balance due under the Subcontract, in the amount of $132,026.94, and unpaid trucking charges in the amount of $36,353.00 (ECF 1, ¶ 50). Brawner disputes the allegations (ECF 24, ¶¶ 46, 50). However, Brawner does not argue that Faddis has failed to state a claim on which relief can be granted.

Although Brawner asserts in its Motion that that Faddis attributes its damages to the "shutdown of its plants in Pennsylvania and Virginia and its debarment from doing work in Virginia" (ECF 67 at 15, 15 n.6), rather than from Brawner's failure to pay, the Complaint does not state that the unpaid balance results from the plant closures. The allegations in the Complaint must be construed as true at this juncture. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Accordingly, I shall deny Brawner's Motion with respect to Count I.

### 2.  Count II: Breach of Contractual Duties

The central dispute with respect to the second breach of contract claim is whether Brawner's contract with Faddis required Brawner to "pass through" to SHA Faddis's claims against SHA.

Brawner contends that, on the basis of the Subcontract, Brawner was not required to facilitate Faddis's claims against SHA. ECF 67 at 8. Therefore, it argues that Faddis cannot state a claim for breach of contract on this basis. *Id.* at 9-10.

Conversely, Faddis maintains, *inter alia*, that pursuant to various provisions of the Subcontract, and under the Code of Maryland Administrative Regulations ("COMAR"), Brawner was obligated to pass through its claims against SHA. It also relies on the implied covenant of good faith and fair dealing and industry practice.

> "Pass through claims" are claims by an allegedly damaged party against an allegedly responsible party with whom it has no contractual relationship. These claims are presented by or through an intervening party in privity with both. The most common example of a pass through claim is a claim by a subcontractor arising out of the actions of the owner that is passed through to the owner by the prime contractor.

Carl A. Calvert & Carl F. Ingwalson, Jr., *Pass Through Claims and Liquidation Agreements*, Constr. Law., Oct. 1998, at 29. Ordinarily, these types of claims are provided for by "liquidating" or "liquidation" agreements between the subcontractor and the prime contractor. *See* 3 Philip L. Bruner & Patrick J. O'Connor, *Bruner & O'Connor Construction Law* § 8:51 (2017); 1 *Construction Contract Deskbook* § 5:30 (2017).

Under a liquidating agreement, the prime contractor derives its standing to assert the claims of the subcontractor against the owner, based on the prime contractor's own liability to the subcontractor. *See, e.g.*, *Honeywell, Inc. v. J.P. Maguire Co.*, No. 93 CIV. 5253DABHBP, 2000 WL 307398, at *12 (S.D.N.Y. Mar. 23, 2000) ("A liquidating agreement cannot exist . . . where the prime contractor is not contractually liable for the subcontractor's claims."); *J. L. Simmons Co. v. United States*, 304 F.2d 886, 888 (Ct. Cl. 1962) ("[A] prime contractor may sue the Government for damages incurred by one of its subcontractors . . . . only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such

reimbursement in the future."). A liquidating agreement can itself create such liability. *See Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 610 (Tex. 2004).

Liquidating agreements are not created by implication, however. Although liquidating agreements "need not take any particular form," there is "no liability in the general contractor absent an actual contractual commitment to that effect." *Barry, Bette & Led Duke Inc. v. State*, 240 A.D.2d 54, 56, 669 N.Y.S.2d 741, 743 (1998). Therefore, "[i]f a subcontractor wants a prime contractor to be a guarantor of job performance, it should bargain for the inclusion in its subcontract of a provision to that effect." *Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co.*, 79 N.Y.2d 801, 803, 588 N.E.2d 69, 70 (1991).

Faddis has not alleged the existence of a liquidating agreement, either in the Complaint or in its response to Brawner's Motion. Rather, it points, *inter alia*, to three provisions of the Subcontract to support its position.

First, Faddis notes that, under the terms of the Subcontract, "[t]he materials to be furnished and/or work to be performed by [Faddis] shall be specified and in accordance with Drawings and Specifications prepared" by SHA. ECF 67-1 at 1. Second, Faddis observes that it was required to "provide on delivery Certification stating that the material conforms with TC 1.02 of Maryland State Highway Administration's Standard Specifications for Construction Materials." *Id.* Third, Faddis quotes a contract provision requiring that Faddis "expressly warrant[] that such materials and work will be in exact accordance with this Order and with the General Conditions, Special Conditions, Contract Drawings and Specifications pertaining to the Construction Contract, so far as applicable to this Order." *Id.* at 3.

Relying on these three provisions of the Subcontract, Faddis contends that its Subcontract with Brawner incorporates by reference Brawner's contract with SHA. Faddis suggests that it is

therefore entitled to a pass-through claim. ECF 71 at 15. It may be that Faddis was bound to conditions laid out in the prime contract between Brawner and SHA, but that document has not been submitted to the Court. In any event, it does not follow that because Faddis was required to comply with provisions or standards established by SHA, it is therefore entitled to remedies available to Brawner under the prime contract.

As indicated, Faddis also relies on the implied covenant of good faith and fair dealing. ECF 71 at 12-13. However, Maryland does not recognize an independent claim for breach of the covenant of good faith and fair dealing. *Baker v. Sun Co. (R & M)*, 985 F. Supp. 609, 610 (D. Md. 1997); *see Howard Oaks, Inc. v. Maryland Nat. Bank*, 810 F. Supp. 674, 677 (D. Md. 1993) ("[U]nless the contract itself obligates a party to perform a certain duty, no independent duty of good faith compels it to do so.").

To be sure, breach of the covenant may be alleged as part of an action for breach of contract. But, there is no "duty requiring affirmative steps beyond those required by the contract itself." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002) (citing *Parker v. The Columbia Bank*, 91 Md. App. 346, 366, 604 A.2d 521, 531 (1992)). Indeed, the Fourth Circuit has said: "[W]hile the implied duty of good faith and fair dealing as recognized in Maryland requires that one party to a contract not frustrate the other party's performance, it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 184 (4th Cir. 2000).

Faddis has failed to specify any express provision of the contract that Brawner has breached. Accordingly, its claim based on the implied covenant of good faith and fair dealing must fail.

In the alternative, Faddis contends that even if Brawner has not breached a specific provision of the Subcontract, "Brawner affected the purpose of the Material Contract in a vital way and circumvented its obligations contravening the purpose of the Material Contract." ECF 71 at 19. Faddis cites *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d 785, in support of this argument. There, the court said that "a breach of contract does occur if it 'affects the purpose of a contract in an important or vital way.'" *Id.* at 791 (quoting *Sachs v. Regal Bank, FSB*, 119 Md. App. 276, 283, 705 A.2d 1 (1998), *aff'd*, 352 Md. 356, 722 A.2d 377 (1999)). Faddis argues that because its performance of the Subcontract was affected, the Subcontract was breached.

Faddis's reliance on *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d 785, is misplaced. That case does not obviate the requirement of a *breach* of contract; the proposition refers to *materiality*. In *Sachs*, on which *Swedish Civil Aviation Admin.* relied, the Maryland Court of Special Appeals said, 119 Md. App. at 283, 705 A.2d at 4: "The law is clear that a breach of contract will be deemed *material* if it affects the purpose of the contract in an important or vital way." (Emphasis added).

Moreover, *Swedish Civil Aviation Admin.* underscores that in order to survive a motion to dismiss, a complaint for breach of contract must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant. *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 791 (citing *Continental Masonry Co., Inc. v. Verdel Constr. Co.*, Inc., 279 Md. 476, 480, 369 A.2d 566, 569 (1977)). Faddis has not alleged breach of a specific term of the Subcontract. Therefore, the argument that "Brawner affected the purpose of the Material Contract in a vital way" (ECF 71 at 19) is unavailing.

In the absence of an applicable contractual provision in the Subcontract or a liquidating agreement, Faddis points to several authorities which it argues require a prime contractor to pass

through the claims of a subcontractor to the owner: (1) COMAR, (2) the General Provisions of the Maryland Department of Transportation Standard Specifications for Construction and Materials ("General Provisions"), (3) Maryland case law, and (4) industry practice. ECF 71 at 4-5, 7. None of these can sustain the claim.

COMAR contains a compilation of all administrative regulations issued by Maryland state agencies, including SHA. In its Opposition, Faddis repeatedly cites COMAR 21.10.04.02. That provision sets forth procedures for the filing of claims against a Maryland agency by a contractor. It states: "Contemporaneously with or within 90 days of the filing of a notice of a claim on a construction contract . . . a contractor shall submit the claim to the appropriate procurement officer." COMAR 21.10.04.02.B. Further, the regulation provides, *id.*:

> The claim shall be in writing and shall contain:
> (1) An explanation of the claim, including reference to all contract provisions upon which it is based;
> (2) The amount of the claim;
> (3) The facts upon which the claim is based;
> (4) All pertinent data and correspondence that the contractor relies upon to substantiate the claim; and
> (5) A certification by a senior official, officer, or general partner of the contractor or the subcontractor, as applicable, that, to the best of the person's knowledge and belief, the claim is made in good faith, supporting data are accurate and complete, and the amount requested accurately reflects the contract adjustment for which the person believes the procurement agency is liable.

According to Faddis, this regulation compels the contractor to file a subcontractor's claims against an agency. ECF 71 at 7, 16-18. I disagree. The regulation details *when* and *how* a contractor is to file a claim, but it does not provide that the contractor *must* do so. Had Brawner elected to pursue Faddis's claims against SHA, or had it been required to do so by some provision in the Subcontract, COMAR 21.10.04.02 would apply as to the process for doing so. But, it would stretch too far to read the word "shall" in the regulation to compel an action not otherwise included in or contemplated by the parties' agreement. The use of the word "shall" in

the regulation presupposes the filing of a claim, but no language in this chapter of COMAR compels such a filing. Therefore, COMAR does not provide Faddis with an independent basis for its claim.

Faddis follows the same line of argument with respect to the General Provisions. ECF 71 at 16-18. As Faddis notes, COMAR and the General Provisions are quite similar on this matter. General Provisions § 5.14 and COMAR specify the same filing period and the same components for claims against a state agency. *See* GP-5.14 Filing of Claim by Contractor; COMAR 21.10.04.02, Filing of Claim by Contractor. And, just as COMAR does not itself require a prime contractor to pursue a subcontractor's potential claims, the General Provisions do not independently afford Faddis any right against Brawner to demand that it pursue a claim against SHA.

Faddis's reliance on Maryland legal precedent is misplaced. Faddis primarily cites a 1984 decision of the Maryland Court of Appeals, *Bd. of Cty. Comm'rs of Frederick Cty. v. Cam Const. Co.*, 300 Md. 643, 480 A.2d 795 (1984). Faddis claims, inaccurately, that the case stands for the proposition that "[p]ass through claims in [subcontracting relationships] are permitted and expected under Maryland law." ECF 71 at 3. Permitted, yes; expected, no. The *Cam Const. Co.* Court recognized that the "the concept of privity is not an absolute bar to a suit brought by a prime contractor against the owner for damages as to which a subcontractor is the real party in interest." 300 Md. at 647, 480 A.2d at 797. The court observed, *id.* at 652, 480 A.2d at 800: "The record does not foreclose [the prime contractor's] being obligated under liquidating agreements to pay any recovery from the County over to the respective subcontractors." Allowing such a suit is a far cry from a general obligation *requiring* such a suit.

In its Opposition, plaintiff defends its contract claim with an appeal to "industry practice." ECF 71 at 3, 4, 5, 6, 7, and 19. The only authority that plaintiff cites for its contention that "industry practice require[s]" the defendant to pursue its claims is a case from the Supreme Court of Texas that discusses the pass-through process: *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605 (Tex. 2004). But, that court also said: "If the contractor disputes the merits of its subcontractor's claims, it is entitled to (1) refuse to enter into a pass-through arrangement with the subcontractor, or (2) refuse to pursue the subcontractor's claims against the owner." *Id.* at 617. Standing alone, contravention of an alleged "industry practice" is inadequate to establish a claim for breach of contract.

For these reasons, I shall grant defendant's Motion with respect to Count II, *i.e.*, plaintiff's claim for breach of contract concerning Faddis's claims against SHA.

### 3. Count III: Interference with Statutory Rights

Faddis styles its third count against Brawner as a claim for "Interference with Statutory Rights." ECF 1 at 15. According to Faddis, SHA violated Faddis's procedural and substantive due process rights, and is liable for a violation of Faddis's civil rights under 42 U.S.C. § 1983. ECF 1, ¶ 59. Plaintiff asserts that it is entitled to damages from SHA, but Brawner interfered with Faddis's ability to obtain damages by not timely pursuing its claim, and thus Brawner assumed SHA's liability. *Id.* ¶¶ 60-65.

Brawner counters that (1) "the Complaint is silent as to what, if anything, Brawner did to 'assume' such liability" (ECF 67 at 11); (2) "[a]s a matter of law, Brawner cannot be held directly (or indirectly) liable for the SHA's alleged violation of Faddis's civil rights because Brawner is not a state actor" (*id.* at 12); and (3) "Faddis also fails to sufficiently plead how the SHA's actions (or some action of Brawner) deprived Faddis of a federal constitutional right." *Id.*

I agree with all three of Brawner's arguments. As a threshold matter, I have not uncovered a cause of action for "interference with statutory rights." Moreover, of the seven substantive allegations in this count, only one of them refers to actions by Brawner. ECF 1, ¶ 65. The remaining allegations concern actions by SHA, which is not a defendant in this case. *Id.* ¶¶ 59-64.

Faddis's allegations can be generously construed two ways: first, as a kind of derivative civil rights claim against Brawner under 42 U.S.C. § 1983; and second, as some species of tortious interference with business relations. Neither claim can be successful as pleaded.

"To state a claim under 42 U.S.C. § 1983, plaintiffs must allege: (1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was caused by the state actor." *Flanagan v. Anne Arundel Cty.*, 593 F. Supp. 2d 803, 809 (D. Md. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Brawner is not a state actor (ECF 1, ¶ 2), nor does Faddis allege that Brawner itself violated any of Faddis's civil rights. Furthermore, "private corporations can only be held liable under § 1983 if 'an official policy or custom of the corporation causes the alleged deprivation of federal rights.'" *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003) (quoting *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999)). Faddis has alleged no such official policy or custom.

As for Faddis's second potential claim, the tort of intentional interference with contractual or business relations is "well-established in Maryland." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 296, 639 A.2d 112, 116 (1994). Broadly stated, it provides that "one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby."

*United Rental Equipment Co. v. Potts & Callahan Contracting Co.*, 231 Md. 552, 560, 191 A.2d 570, 574 (1963).

The Maryland Court of Appeals reiterated the elements of the tort in *Blondell v. Littlepage*, 413 Md. 96, 125, 991 A.2d 80, 97 (2010) (quoting *Kaser v. Financial Protection Marketing, Inc.*, 376 Md. 621, 628-29, 831 A.2d 49, 53 (2003)), as follows:

> A claim for intentional interference with contractual or business relations requires the following elements: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."

*See also View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 615 (D. Md. 2014) (citation omitted).

The tort has "two general manifestations." *Macklin*, 334 Md. at 297, 639 A.2d at 117. The first manifestation is often described as "'inducing the breach of an existing contract,'" and the second, "more broadly, constitutes maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Blondell*, 413 Md. at 125, 991 A.2d at 97 (citation omitted). In other words, under Maryland law, one may claim tortious interference with a contract or, in the absence of a contract or breach of contract, one may claim tortious interference with business or economic relations.

Maryland courts have "'never permitted recovery for the tort of intentional interference with a contract when both the defendant and the plaintiff were parties to the contract.'" *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 156, 557 A.2d 965, 974 (1989) (quoting *Wilmington Trust Co. v. Clark*, 289 Md. 313, 329, 424 A.2d 744, 754 (1981)). Logically, an injured party's legal remedy in such a situation is an action for breach of contract, not an action for tortious interference with contract. *Id.* at 155-66, 557 A.2d at 974. Thus, "there is no cause of action for

interference with a contract when suit is brought against a party to the contract." *Wilmington Trust Co.*, 289 Md. at 329, 424 A.2d at 754.

But, the same is not true in cases where the plaintiff alleges tortious interference with contract and the defendant is a party to the underlying economic relationship but not to the contract at issue. Rather, the opposite is true. Because the injured party could *not* bring a breach of contract claim against the defendant, the tort creates a claim for liability based on the defendant's inducement of a third party's breach. *See*, *e.g.*, *Blondell*, 413 Md. at 125, 991 A.2d at 97 (quoting *Kaser*, 376 Md. at 630-31, 831 A.2d at 54).

In such cases, the third party's liability does not depend on the economic relationship between the parties, *per se.* It depends upon the third party's intent and the nature of the acts that induced the breach, *i.e.* whether the acts were wrongful, or whether, to the contrary, they were somehow privileged or justified. *See Blondell*, 413 Md. at 125, 991 A.2d at 97; *United Rental Equipment Co*, 231 Md. at 560, 191 A.2d at 574. The economic relationship between the parties is, of course, relevant to the question of whether the third party's acts were wrongful or justified. *See*, *e.g.*, Restatement (Second) of Torts § 767 ("Factors in Determining Whether Interference is Improper").

Faddis has not alleged that Brawner's failure to pass through the claim was calculated to harm Faddis, or done with an unlawful purpose, and without justifiable cause. At best, Faddis has alleged that Brawner declined to pursue plaintiff's claims against SHA for its own material gain. As for Brawner's purported assumption of liability for damages (ECF 1 at ¶ 65), Faddis has offered no factual support for this legal conclusion.

Accordingly, Faddis has failed to state a claim on which relief can be granted in Count III. I shall grant Brawner's Motion with respect to this count.

### 4. Count IV: Unjust Enrichment; Imposition of Constructive Trust

Faddis alleges that, as a result of Brawner's decision not to pass through Faddis's claims against SHA, Brawner was unjustly enriched. ECF 1, ¶¶ 67-69. Brawner moves to dismiss the claim on the basis that "a party cannot assert a claim for unjust enrichment regarding the subject matter of an express contract." ECF 67 at 14.

In Maryland, a claim of unjust enrichment is not based on contract. Rather, it is based on quasi-contract. *Alternatives Unlimited, Inc. v. New Baltimore City Board of School Commr's*, 155 Md. App. 415, 472, 843 A.2d 252, 286 (2004). A claim of unjust enrichment is established when: "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 389 Md. 615, 651-52, 887 A.2d 525, 546 (2005) (citation omitted); *see also Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343, 351 (2007); *Cnty. Comm'rs of Caroline Cnty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7, 747 A.2d 600, 607 n.7 (2000); *Jackson v. 2109 Brandywine, LLC*, 180 Md. App. 535, 574, 952 A.2d 304, 327, *cert. denied*, 406 Md. 444, 959 A.2d 793 (2008); *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 792-93.

Unjust enrichment is a remedy "'to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" *Dashiell*, 358 Md. at 96-97, 747 A.2d at 607 (quoting *Dunnaville v. McCormick & Co.*, 21 F. Supp. 2d 527, 535 (1998)). "The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Id.* at 96, 747 A.2d at 607; *see Janusz v. Gilliam*, 404 Md. 524,

537, 947 A.2d 560, 567 (2008) ("In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties.") (internal quotation marks omitted); *see also FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.").

Although a plaintiff "may not recover under both contract and quasi-contract theories, [he] is not barred from pleading these theories in the alternative . . . ." *Swedish Civil Aviation Admin.* 190 F. Supp. 2d at 792. Faddis's claim for unjust enrichment is a claim in the alternative to its contract claim.

"A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'" *Hill*, 402 Md. at 295-96, 936 A.2d at 352 (citation omitted); *see also Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151, 757 A.2d 108, 113 (2000). But, "[g]enerally, courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of fraud or bad faith,[] there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted,[] or when the express contract does not fully address a subject matter.[]" *Dashiell*, 358 Md. at 100, 747 A.2d at 608-09.

Faddis alleges that (1) Brawner was aware of the damage to Faddis (presumably that allegedly inflicted by SHA) and did not pursue a claim against SHA (ECF 1, ¶ 67); and (2) Brawner received "concessions and consideration" from SHA in return for not pursuing Faddis's claims. *Id.* ¶ 68. Although Faddis arguably alleges facts sufficient to find that Brawner was

enriched, Faddis has failed to plead the first and third elements of unjust enrichment: that the benefit was conferred by the plaintiff upon the defendant, and that it would be inequitable for the defendant to retain the benefit.

As to the first element, Faddis alleges that Brawner received concessions and consideration *from SHA* in exchange for not pressing Faddis's claims. *Id.* ¶ 68. In a sense, plaintiff baldly suggests that SHA knew of Faddis's request to Brawner to pass through a claim against SHA, and SHA made a side deal of sorts with Brawner to compensate Brawner for not processing plaintiff's claims against SHA.

Maryland courts "have not required always that a benefit conferred in an unjust enrichment action come necessarily and directly to the defendant from the plaintiff's own resources." *Hill*, 402 Md. at 298, 936 A.2d at 353. "'It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner.'" *Plitt v. Greenberg*, 242 Md. 359, 364, 219 A.2d 237, 241 (1966) (quoting *Empire Oil Co. v. Lynch*, 106 Ga. App. 42, 126 S.E.2d 478, 479 (1963)). However, Faddis has not alleged that any of the purported "concessions and consideration" that Brawner received from SHA rightfully belong to Faddis. *See Smith v. Alacrity Servs., LLC*, 778 F. Supp. 2d 606, 610 (D. Md. 2011) ("Although it is undisputed that [defendant] was paid by [the insurer] . . . [plaintiff] has not established that this payment infringed any interest of [plaintiff's].")

In its surreply, plaintiff implies that its unjust enrichment claim concerns not only defendant's failure to pass through its claims against SHA, but also its failure to pay the amount owed under the original Subcontract. ECF 74-1 at 12-13. To the extent that Faddis is in fact alleging that Brawner was unjustly enriched because "it owes Faddis for contract balance

amounts and extra trucking costs that benefitted Brawner and Brawner expected to pay, yet did not pay" (*id.* at 13), Faddis could satisfy the prima facie elements of the claim, in that (1) Faddis conferred a benefit on Brawner (provision of the concrete panels for the Project), (2) Brawner knew of the benefit, and (3) Brawner's acceptance of the benefit without paying Faddis would be unjust.

However, Faddis did not make this claim in its Complaint. Count IV of the Complaint, as noted, discusses the damages inflicted by SHA and the consideration Brawner received from SHA for not pressing Faddis's claims, but does not mention any direct harm caused by Brawner. ECF 1, ¶¶ 67-69. Faddis also "incorporate[d] by reference . . . All averments of this complaint as though more fully set forth herein again at length." *Id.* ¶ 66. But, this general incorporation does not rectify Faddis's failure to plead with particularity that its unjust enrichment claim is based on the unpaid contract balance. Faddis may not—only in its surreply and for the first time— vaguely hint at the facts underlying its claim and assume that it has "'give[n] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Faddis also proposes that this "Court should impose a constructive trust on Brawner's SHA Contract proceeds and award such relief as is necessary to secure such assets and proceeds for the benefit of Faddis." ECF 1, ¶ 70. As Brawner correctly points out, "there is no independent cause of action in Maryland for a 'constructive trust.'" ECF 73, at 13. *See Lyon v. Campbell*, 33 F. App'x 659, 663 (4th Cir. 2002) (applying Maryland law and stating: "A constructive trust is an equitable remedy, not a cause of action in and of itself."); *see also Stewart Title Guar. Co. v. Sanford Title Servs., LLC*, Civ. No. ELH-11-260, 2011 WL 2681196, at *4 (D. Md. July 8, 2011). In *Washington Suburban Sanitary Commission v. Utilities, Inc.*, 365

Md. 1, 39, 775 A.2d 1178, 1200 (2001) (citation omitted), the Maryland Court of Appeals explained that the "'constructive trust, like its counterpart remedies "at law," is a remedy for unjust enrichment.'"

In other words, a constructive trust is a "remedial request[] that depend[s] upon [the] plaintiff's substantive causes of action," such as unjust enrichment. *Stewart Title*, 2011 WL 2681196, at *5; *see also Alternatives Unlimited*, 155 Md. App. at 460, 843 A.2d at 279. Given that Faddis has failed to state a claim for unjust enrichment, there is no basis for the imposition of a constructive trust at this time.

For these reasons, I shall grant defendant's motion with respect to Count IV of the Complaint.

## V.  Conclusion

Assuming, *arguendo,* the truth of the allegations in Faddis's Complaint, they evince disturbing conduct by SHA. From these facts Faddis had—and may still have—a colorable tort claim against SHA. Indeed, SHA appears to have invited such a claim in its correspondence with plaintiff in June 2014. *See* ECF 71-1 at 26. But, SHA is not a defendant in this case, and even a sympathetic plaintiff cannot recover damages from the wrong party. Faddis cannot create from the facts of this case a basis to sue Brawner for failing to pursue for Faddis the alleged wrongs of SHA.

For the reasons stated above, I shall DENY defendant's Motion for Judgment on the Pleadings with respect to Count I, and GRANT the Motion with respect to Counts II, III, and IV, without prejudice. However, If Faddis has uncovered in discovery facts sufficient to support a valid claim against Brawner for unjust enrichment or tortious interference, consistent with the

principles outlined above, it may seek leave to amend its Complaint within 17 days of the Order accompanying this Memorandum Opinion.

An Order follows, consistent with this Memorandum Opinion.


Date:   September 15, 2017                                    _____/s/_____
                                                            Ellen L. Hollander
                                                            United States District Judge